UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**MELINDA DUNN**                                          CIVIL ACTION

**VERSUS**                                               NO. 21-1452

**FOLGERS COFFEE COMPANY**                               SECTION "B"(2)
**d/b/a THE J.M. SMUCKER CO.,**
**ET AL.**

<u>ORDER AND REASONS</u>

Before the court are defendants International Union of the United Automobile, Aerospace and the Agricultural Workers of America, Local 1805's ("Union" or "Local 1805"), and Ricky Silva's ("Silva") motion to dismiss (Rec. Doc. 10), plaintiff Melinda Dunn's ("Dunn" or "Plaintiff") response in opposition (Rec. Doc. 15), and defendants' reply in support (Rec. Doc. 19). For the following reasons,

**IT IS ORDERED** that defendants' motion to dismiss is **GRANTED**, dismissing plaintiff's claims against Ricky Silva and the Union; and

**IT IS FURTHER ORDERED** that within fourteen days of the issuance of this order plaintiff may seek leave to amend the complaint to provide relevant factual support, if any, for Title VII and ADA claims against the Union to comport with noted findings further below.

I.   <u>FACTS AND PROCEDURAL HISTORY</u>

On or about August 26, 2019, plaintiff began employment with defendant Folgers Coffee Company d/b/a J.M. Smucker Co. ("Folgers") as a technician. Rec. Doc. 1-1. Around that same time, plaintiff's membership with Local 1805 also began. *Id.* During the first several weeks of training, she was trained by Moe Smith, her supervisor. *Id.* Plaintiff progressed normally and was not subject to any "bad" or "unacceptable" evaluations during training with Smith. *Id.* However, partway through training, plaintiff was reassigned to a new supervisor and trainer, Wayne Bordonaro. *Id.* According to plaintiff, she was informed by Folgers that Moe Smith was being trained in a new set of skills with the company, and a new trainer had to be assigned. Rec. Doc. 1-1.

During training with Bordonaro, plaintiff claims that he repeatedly undermined, belittled, and silenced her in front of other co-workers. *Id.* Bordonaro also refused to refer to plaintiff by her name; instead, Bordonaro called her using gender-based nicknames such as "boo." *Id.* Bordonaro also reportedly blamed his mistakes on plaintiff and refused to listen to her admonitions on proper procedures. *Id.* Further, Bordonaro would allegedly provide inconsistent and unintelligible instructions, often in rapid succession, and reprimanded her for asking questions when she was confused. *Id.* He allegedly told plaintiff that "what happens on this line stays on this line" and "don't ever let me hear that my name crossed your lips." Rec. Doc. 1-1.

On or about October 11, 2019, plaintiff scheduled a meeting with Union President and Folgers employee Ricky Silva. *Id.* At this meeting, plaintiff reported to Silva that she was being harassed and discriminated against by Bordonaro. *Id.* Plaintiff sought Silva's help because he was the Union President and Folgers' procedure designated Silva to receive reports of sexual harassment and discriminatory conduct. *Id.* Shortly after reporting noted conduct, plaintiff was informed that Folgers was terminating her employment. *Id.*

On or about May 7, 2021, plaintiff filed a petition for damages in state court, alleging unlawful discrimination based on sex and disability. *See* Rec. Doc. 1-1. Plaintiff also brought claims for retaliation under Title VII and breach of duty of fair representation under the National Labor Relations Act ("NLRA"). *Id.* She claims the Union failed to investigate but actively supported her harasser, Bordonaro. *Id.* On or about July 30, 2021, defendant Folgers removed the action to this court based on federal question jurisdiction, 28 U.S.C. § 1331. Rec. Doc. 1 (Removal Action).

Plaintiff also seeks relief under the Americans with Disabilities Act because she has been diagnosed and received treatment for Attention Deficit Disorder. Rec. Doc. 1-1. The complaint asserts that Folgers and the Union were aware of plaintiff's disability because she disclosed that information in

3

her new hire paperwork. *Id.* As part of defendants' hiring practices, she was required to submit to a pre-employment drug test. *Id.* It was at this drug test that she disclosed taking methylphenidate for her disability. *Id.*

On or about August 24, 2021, defendants Union and Silva filed the instant motion to dismiss. Rec. Doc. 10. As basis, defendants assert failures by plaintiff to state a cause of action against the Union under Title VII and the ADA and a failure to exhaust administrative remedies. *Id.* Additionally, defendants argue that claims for breach of duty and Louisiana Employment Discrimination Laws (LEDL) are prescribed; and must be dismissed. *Id.* Silva's dismissal motion asserts claims under Title VII and ADA are not applicable to him in his individual or official capacity. Rec. Doc. 10.

On or about September 28, 2021, plaintiff filed a timely memorandum in opposition. Rec. Doc. 15. First, she contends administrative remedies were exhausted before filing suit. *Id.* Next, she asserts the breach of duty claim is not prescribed because the statute of limitations was tolled by the filing of her EEOC charge. *Id.* Regarding Title VII and ADA claims, plaintiff contends those claims were adequately pled in her petition. *Id.* Lastly, she does not contest the dismissal of Ricky Silva as a party defendant. *Id.*

On or about October 4, 2021, defendants filed a reply memorandum supporting the motion to dismiss. Rec. Doc. 19.

## II.  <u>LAW AND ANALYSIS</u>

### A. Standard of Review

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff's complaint "must contain enough facts to state a claim to relief that is plausible on its face." *Varela v. Gonzalez*, 773 F.3d 704, 707 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal quotes omitted)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). However, the court is not bound to accept as true legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor v. Books A Million, Inc.,* 296 F.3d 376, 378 (5th Cir. 2002). *A fortiori*, a complaint may be dismissed when it appears "beyond a doubt that plaintiff can prove no set of facts" that would entitle him to prevail. *Twombly*, 550 U.S. at

560-61, 127 S.Ct. 1955; *First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc.*, 178 F. Supp. 3d 390, 399 (E.D. La. 2016). However, the Fifth Circuit has stated that motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) are "viewed with disfavor and [are]...rarely granted." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir.2009).

### B. Exhaustion of Federal Administrative Remedies

#### 1. Title VII Claims

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, prohibits discrimination based on race, color, religion, sex, or national origin in federal and private employment. Title VII grants an aggrieved employee the right to file suit in federal district court, *see* 42 U.S.C. § 2000e-16(c), but before suing, an employee must exhaust administrative remedies against their employer. *See Francis v. Brown*, 58 F.3d 191, 192 (5th Cir. 1995); *Brown v. General Servs. Admin.*, 425 U.S. 820, 832-33, 96 S.Ct. 1961, 1967-68, 48 L.Ed.2d 402 (1976). If an employee fails to exhaust administrative remedies, the district court cannot adjudicate the employee's Title VII claim. *See Porter v. Adams*, 639 F.2d 273, 276 (5th Cir.1981) (noting that exhaustion is "an absolute prerequisite" to suit under § 2000e-16). Therefore, a claimant must first file a timely claim with the EEOC and receive a right to sue letter before a lawsuit on the claim can be filed.

Plaintiff filed her charge with the EEOC on October 11, 2019, asserting sex discrimination and retaliation under Title VII. Rec. Doc. 15-2.  Defendants argue that plaintiff did not file the EEOC charge against the Union; instead, she only filed the charge against Folgers.  However, on the charge of discrimination application, plaintiff Dunn expressly typed out the name of the Union as the discriminating party. *See id.* Moreover, plaintiff received her right to sue the Union on February 10, 2021. Rec. Doc. 15-3. Accordingly, plaintiff properly exhausted Title VII administrative remedies.

### 2. Americans with Disabilities Act (ADA) Claims

It is well-settled that a plaintiff must exhaust all administrative remedies before an action can be brought under the ADA. *See, e.g., Dao v. Auchan Hypermarket*, 96 F.3d 787, 788–89 (5th Cir.1996); *Adams v. Columbia/HCA of New Orleans, Inc.,* No. CV 20-3030, 2021 WL 5178286 (E.D. La. Apr. 8, 2021). The exhaustion requirement is satisfied when plaintiff files a timely charge with the EEOC and receives a statutory right-to-sue notice. *Dao*, 96 F.3d at 788–89. The Fifth Circuit has held there is no jurisdiction for a court to consider an ADA claim when the aggrieved party has not exhausted all administrative remedies. *See, e.g., Nat'l Ass'n v. City of Public Service Board of San Antonio*, 40 F.3d 698, 711 (5th Cir.1994). After the exhaustion requirement is satisfied, any subsequent lawsuit under the ADA is restricted to the scope of the

plaintiff's administrative charge and the EEOC investigation that can reasonably be expected to grow out of that charge. *Pacheco v. Mineta,* 448 F.3d 783, 788-89 (5th Cir. 2006). However, if a plaintiff fails to exhaust her administrative remedies, the court must dismiss the unexhausted claims on their merits. *Dao*, 96 F. 3d at 788-89.

As with the Title VII claims, *supra*, plaintiff adequately exhausted her administrative remedies regarding the ADA claim. In the charge of discrimination application, plaintiff checked the boxes for Title VII retaliation and sex discrimination **and** the box for disability discrimination. Rec. Doc. 15-2.  Plaintiff also received her right to sue letter on February 10, 2021. Rec. Doc. 15-3. Accordingly, administrative remedies regarding the ADA claim have been adequately exhausted.

**C. Louisiana Employment Discrimination Laws (LEDL)**

Plaintiff claims that the Union violated the state disability discrimination statute, which provides that "no otherwise qualified person with a disability shall, on the basis of a disability, be subjected to discrimination in employment." La. Rev. Stat. § 23:323.  Defendants, however, argue that this claim is prescribed.

Claims under La. Rev. Stat. § 23:323 are governed by the prescriptive period set forth in La. Rev. Stat. § 23:303(D). *See Lefort v. Lafourche Par. Fire Prot. Dist. No. 3,* 39 F. Supp. 3d

8

820 (E.D. La. 2014); *Nabors v. Metro. Life Ins. Co.*, CIV.A. No. 12-827, 2012 WL 2457694, at *3 (W.D.La. May 30, 2012). It reads:

> Any cause of action provided in this Chapter shall be subject to a prescriptive period of one year. However, this one-year period shall be suspended during the pendency of any administrative review or investigation of the claim conducted by the federal Equal Employment Opportunity Commission or the Louisiana Commission on Human Rights. No suspension authorized pursuant to this Subsection of this one-year prescriptive period shall last longer than six months.

La. Rev. Stat. § 23:303(D). This one-year prescriptive period begins to run from the date of notice of termination. *Eastin v. Entergy Corp.*, 865 So.2d 49, 54 (La. 2004). Additionally, both the Fifth Circuit and this Court have consistently recognized that Section 23:303(D) provides for a maximum prescriptive period of eighteen (18) months. *See, e.g., Williams v. Otis Elevator Co.*, 557 Fed.Appx. 299, 302 (5th Cir. 2014) ("The Louisiana anti-discrimination statute has a prescriptive period of one year, which can be suspended for a maximum of six months during the pendency of a state or federal administrative investigation."); *Lefort v. Lafourche Par. Fire Prot. Dist. No. 3*, 39 F. Supp. 3d 820, 825 (E.D. La. 2014) ("Consequently, the Louisiana disability discrimination statute requires a plaintiff to file suit on his discrimination claim no later than eighteen months after the occurrence forming the basis for the claim."); *Bellow v. Bd. of Sup'rs of Louisiana State Univ. & Agr. & Mech. Coll.*, 913 F. Supp. 2d 279, 289 (E.D. La. 2012) ("Therefore, the total amount of time

that a plaintiff has to bring a claim under Louisiana Revised Statute [§] 23:322 is eighteen months.")

The incident forming the basis of plaintiff's claim under the LEDL occurred on October 11, 2019. Not only did plaintiff report her allegations to the defendant on that date, but Folgers also terminated plaintiff's employment on that date. Therefore, plaintiff had a total of eighteen (18) months from that day to file suit. Plaintiff, however, did not file the current suit until May 7, 2021. Accordingly, the claim is prescribed on its face and must be dismissed.

### D. Breach of Duty of Fair Representation

Section 9(a) of the National Labor Relations Act ("NLRA") implies a duty of fair representation, which requires a union "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *O'Neill v. Airline Pilots Ass'n, Int'l*, 939 F.2d 1199, 1201 (5th Cir. 1991) (quoting *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)); *Carr v. Air Line Pilots Ass'n, Int'l*, 866 F.3d 597 (5th Cir. 2017), as revised (July 14, 2017). Unions have broad discretion in resolving internal disputes, and their actions are judged by a "wide range of reasonableness." *Id.* A breach of fair duty occurs only when the union's conduct is "arbitrary, discriminatory, or in bad faith." *Id.* A claim that a

union acted 'perfunctorily' requires a demonstration that the union ignored the grievance, inexplicably failed to take some required step, or gave the grievance merely cursory attention." *Lowrey v. Exxon Corp.*, 812 F. Supp. 644, 650 (M.D. La. 1993); T*ate v. United Steel Workers Union Loc. 8363*, No. CV 20-882, 2021 WL 3633472 (E.D. La. Aug. 17, 2021).

Furthermore, a claim that the Union has breached its duty of fair representation is an unfair labor practice under §§ 8(b) and 10(b) of the NLRA. *Tate*, 2021 WL 3633472 at *11. As a result, § 10(b)'s six-month statute of limitations governs. *Id.; see also DelCostello v. Int'l Broth. of Teamsters*, 462 U.S. 151, 169 (1983). The limitations period begins to run when the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the acts that form the basis of the duty of fair representation claim. *See Lee v. Cytec Indus., Inc.*, No. CIV.A.03-3176, 2005 WL 1155772, *8 (E.D. La. May 12, 2005), *aff'd*, 460 F.3d 673 (5th Cir. 2006); *Hebert v. Gen. Truck Drivers, Chauffeurs, Warehousemen and Helpers, Local 270*, No. Civ.A. 03-1744, 2004 WL 1597144, at *5 (E.D.La. July 16, 2004). The period begins "when the plaintiff either knew or should have known of the injury itself, i.e., the breach of duty of fair representation, rather than of its manifestations." *Barrett v. Ebasco Constructors, Inc.*, 868 F.2d 170, 171 (5th Cir.1989).

In *Stevens v. Lake Charles Coca-Cola Bottling Co.*, the plaintiff, Harry Stevens, sued Coca-Cola Bottling Company United, Inc. ("CCBU"), claiming CCBU breached its collective bargaining agreement and its duty to fairly represent the plaintiff. No. 2:11 CV 344, 2011 WL 2173649 (W.D. La. June 1, 2011). In response, CCBU filed a motion to dismiss plaintiff's claims. *Id.* at *1. The Western District of Louisiana court ultimately granted the defendant's motion to dismiss on the grounds that the plaintiff's claim was untimely. *Id.* at *3. The Court began its analysis by stating the applicable statute of limitations for plaintiff's claim was six-months. *Id.* at *3-4. This six-month period began to run when the plaintiff knew or should have known of the injury, i.e., the union's failure to fairly represent him. *Id.* In this case, the Court reasoned that Stevens' claim was untimely given the acts forming the basis of his suit arose in March 2010. *Stevens*, 2011 WL 2173649 at *3-4. Accordingly, the latest possible date in which Stevens could have filed his claim would have been September 2010, six-months later. *Id.* Plaintiff's petition, however, wasn't filed until February 2011. *Id.* Thus, plaintiff's claim was untimely, and the Court granted defendant's motion to dismiss. *Id.*

Like the plaintiff in *Stevens*, Dunn also had a six-month statute of limitations period in which she was required to assert any claim against the Union for breach of its duty of fair

12

representation. Plaintiff informed the defendants on October 11, 2019, of the alleged harassment and discriminatory conduct of Mr. Bordonaro. Likewise, on that same date, plaintiff claimed the defendants failed to act on her allegations and "actively supported her termination." Rec. Doc. 1-2 at 10-11 (Petition). Because plaintiff knew on October 11, 2019 that the Union failed to act on her allegations, the six-month period began to run from that date. Thus, plaintiff had until April 11, 2020 to bring her cause of action against defendants. Plaintiff, however, did not file her petition until May 7, 2021. Accordingly, the statute of limitations has run and the subject claim must be dismissed.

### E. Silva is not a Proper Party

As discussed *supra*, Title VII makes it "an unlawful employment practice for an employer ... to discriminate against any individual ... because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). However, "the statutory scheme of title VII indicates [s] that Congress did not intend to impose individual liability on employees." *Nelson v. Lake Charles Stevedores, L.L.C.*, No. 2:11-CV-1377, 2014 WL 1339827 (W.D. La. Apr. 2, 2014); *See also Chehl v. So. Univ. & Agric. & Mech. Coll.*, 34 Fed. Appx. 963 (5th Cir.2002) (stating that "[w]hile Title VII defines 'employer' to include any agent of the employer, the Fifth Circuit does not interpret the statute to impose individual liability on the agent")). While the statute

13

defines "employer" to include any "agent" of the employer, 42
U.S.C. § 2000e(b), "the purpose of the 'agent' provision in §
2000e(b) [is] to incorporate *respondeat superior* liability into
title VII." *Grant v. Lone Star Co.*, 21 F.3d 649, 652 (5th
Cir.1994). "Thus, a Title VII suit against an employee is actually
a suit against the [employer]." *Hosey v. M.L. Smith, Jr., Inc.*,
No. 3:05-1706, 2007 WL 2592357 (W.D.La. Sept. 6, 2007) (quoting
*Indest v. Freeman Decorating*, Inc., 164 F.3d 258, 262 (5th
Cir.1999). In other words, an employee may not be held personally
liable for damages under Title VII. *Ackel v. National
Communications, Inc.*, 339 F.3d 376, 381 n.1 (5th Cir. 2003)
(holding "[i]ndividuals are not liable under Title VII in either
their individual or official capacities."); *Grant v. Lone Star
Co.*, 21 F.3d 649, 651-52 (5th Cir.1994); *Indest v. Freeman
Decorating, Inc.*, No. 95-16, 1995 WL 366484, at *1 (E.D.La. June
20, 1995) (Clement, J.) ("The law is well-settled in the Fifth
Circuit that employees cannot be sued in their individual capacity
under Title VII").

Furthermore, the ADA definition of "employer" mirrors the
Title VII definition. *Franklin v. City of Slidell*, 936 F. Supp. 2d
691, 703 (E.D. La. 2013). Although the Fifth Circuit has not
directly addressed the question of whether an employer's agent or
employee may be held liable under the ADA, this Court has recently
concluded that individuals are not subject to liability under Title

14

I of the ADA. *Id.* at 703. The Court reached this conclusion in light of "(a) the similarities between the definition of "employer" in Title VII and the ADA, (b) the similar purposes of the two statutes, (c) the Fifth Circuit's consistent holdings that individuals cannot be held liable under Title VII in either their individual or official capacities, and (d) the weight of authority outside of the Fifth Circuit." *Id.* (dismissing plaintiffs ADA and Title VII claims against the individual defendants as such claims are not legally cognizable.)

Plaintiff stated that she does not contest the dismissal of Ricky Silva as a party defendant. To the extent that she is asserting claims against Silva under Title VII and the ADA, the Court finds that such claims are not legally cognizable. Silva is an individual defendant employee, and as such, he cannot be held liable in either his individual capacity or official capacity as Union President. Additionally, given plaintiff is not opposed to Silva's dismissal, the proper course of action is to dismiss Silva as an individual party defendant.

**F. Plaintiff fails to state a claim against the Union for Discriminatory Conduct under Title VII.**

Sex Discrimination Claim Under Title VII

A Title VII plaintiff carries the initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also Tate v.*

*United Steel Workers Union Loc. 8363*, No. CV 20-882, 2021 WL
3633472 (E.D. La. Aug. 17, 2021). Employment discrimination
plaintiffs often rely on indirect evidence of discrimination using
the burden-shifting framework of *McDonnell Douglas*. *McDonnell
Douglas Corp.*, 411 U.S. at 802-03. However, the Fifth Circuit
adopted a modified *McDonnell* Douglas test for claims of
discrimination by a union. *Wesley v. Gen. Drivers Local 745*, 660
F.3d 211, 214 (5th Cir. 2011); *Tate*, 2021 WL 3633472 at *6. For
claims involving a union, the plaintiff must establish that (1)
she is a member of a protected class, (2) she was subject to an
adverse union action, and (3) she was treated less favorably by
the union than employees of a different sex. *Wesley*, 660 F.3d at
214(citing *Stalcup v. Commc'n Workers of Am.*, 44 F. App'x 654 (5th
Cir. 2002)).

     To establish that she was treated less favorably than
similarly situated union members, Plaintiff must proffer a
comparator, a union member who is a member of a different sex who
was treated more favorably "under nearly identical circumstances,"
which is established when the members' conduct and circumstances
are nearly identical. *See Dotson v. Gulf*, No. Civ.A. H-05-0106,
2006 WL 44071, at *7 (S.D. Tex. Jan. 9, 2006) (citing *Krystek v.
Univ. of S. Miss.*, 164 F.3d 251, 257 (5th Cir. 1999) (holding non-
tenure track professor is not similarly situated to a tenure track
professor)); *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th

16

Cir. 2009) ("[W]e require that an employee who proffers a fellow employee demonstrate that the employment actions at issue were taken 'under nearly identical circumstances.'").   "The 'nearly identical' standard, when applied at the *McDonnell Douglas* pretext stage is a stringent standard – employees with different responsibilities, different supervisors, different capabilities, different work rule violations, or different disciplinary records are not considered to be 'nearly identical.'" *Dotson*, 2006 WL 44071, at *7 (citing *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 514-15 (5th Cir. 2001)).

Here, plaintiff did not plead any facts to infer that she fell victim to sex discrimination by the Union. The extent of plaintiff's factual allegations are the same contentions she puts forth for her retaliation claim, *infra*. Essentially, plaintiff restates that the Union "failed to open an investigation," "failed in its duties of representation," and "actively supported her termination." However, the asserted conclusions do not lend factual support to a claim for sex discrimination. Likewise, plaintiff did not put forth any allegations that the Union treated her less favorably than a particular person of another sex under similar circumstances. Plaintiff may seek leave to amend the complaint within fourteen days to allege factual support, if any,

for legal conclusions against the Union in an effort to rectify noted deficiencies.[1]

<u>Retaliation Claim Under Title VII</u>

In analyzing retaliation claims under Title VII, a plaintiff must plead that "(1) she engaged in activity protected by Title VII, (2) she suffered a materially adverse employment action, and (3) there was a causal link between the protected activity and the adverse employment action." *Jenkins v. City of San Antonio Fire Dep't*, 784 F.3d 263, 269 (5th Cir. 2015). A labor organization such as the Union cannot discriminate against any member "because [s]he has opposed any practice made an unlawful employment practice by [Title VII] or ... made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a).

In *Jackson v. W. Gulf Mar. Ass'n*, plaintiff Florence Jackson, filed suit against her employer, Texas Stevedoring, and her union, International Longshoremen's Association, AFL-CIO, Local 24 ("Local 24"). No. CV H-19-2219, 2020 WL 10895553 (S.D. Tex. Sept. 3, 2020). In her complaint, plaintiff alleged defendants harassed and discriminated against her. *Id.* at *1. Jackson further alleged defendants retaliated against her for filing complaints and kept her from obtaining gainful employment. *Id.* Thereafter, Local 24

---

[1] Pleadings filed in good faith and with good cause are acceptable; repetitive, vexatious, false, and harassing ones are subject to dismissal and sanctions.

moved for summary judgement on plaintiff's Title VII sex discrimination and retaliation claims. *Id.* Local 24 contended Jackson failed to present a *prima facie* case of retaliation; thus, the claim failed. *Id.* at *5. Upon review, the Southern District of Texas court granted the defendant's motion for summary judgment as to Jackson's Title VII claim for retaliation. *Jackson*, 2020 WL 10895553 at *5. The court reasoned that to establish a *prima facie* case of retaliation Jackson was required to show: (1) she engaged in a protected activity; (2) she was subjected to an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action. *Id.* Plaintiff, however, failed to carry her burden of proof. *Id.* Specifically, plaintiff failed to satisfy the second prong, *supra*, as she could not show that she was subjected to an adverse employment action. *Id.* Because plaintiff failed to satisfy her burden of proving all three elements of her claim, the Court granted summary judgment in favor of defendant Local 24. *Jackson*, 2020 WL 10895553 at *5.

Likewise, in *Williams v. Recovery Sch. Dist.*, plaintiff Joe Williams filed suit against defendant Recovery School District ("RSD"), alleging he was denied equal employment opportunities based on his race, age, and disability. 859 F. Supp. 2d 824 (E.D. La. 2012). Williams also alleged that RSD subjected him to various retaliatory acts, in violation of Title VII. *Id.* at 827. Subsequently, RSD filed a Rule 12(b)(6) motion to dismiss, seeking

19

to dismiss plaintiff's compliant in its entirety. *Id.* at 830-32.
In reviewing plaintiff's retaliation claim against RSD, this Court
began by citing the three-prong test, discussed *supra*. *Id.* The
Court then went on to find that Williams failed to allege facts
sufficient to sustain his retaliation claim. *Id.* Specifically, the
Court noted that plaintiff failed to allege the third element of
his claim, a causal connection between his protected activity and
his termination of employment. *Williams*, 859 F. Supp. 2d at 830-
32. Because Williams did not properly plead a prima facie case for
retaliation, the Court dismissed his claim. *Id.*

Like the plaintiff in *Williams* who failed to satisfy all three
prongs for a retaliation claim, Dunn has also failed to plead a
proper cause of action for retaliation. Specifically, she failed
to plead and allege factual support for the third prong, i.e.
causal connection between a protected activity and the adverse
employment action. Plaintiff properly pled the first element by
reporting harassment and discrimination to Silva in his capacity
as the Union President. The act of reporting discriminatory actions
is a protected activity. *EEOC v. Rite Way Serv., Inc.*, 819 F.3d
235, 239 (5th Cir. 2016) (quoting 42 U.S.C. § 2000e-3(a)) ("Under
Title VII's antiretaliation provision, protected activity can
consist of either: (1) 'opposing any practice made an unlawful
employment practice by [Title VII]' or (2) 'making a charge,
testifying, assisting, or participating in any manner in an

investigation, proceeding, or hearing under [Title VII].'")
Plaintiff also satisfied the second prong by alleging an adverse
employment action, termination of employment from Folgers.

Plaintiff claims the Union "failed to open an investigation,"
"failed in its duties of representation," and "actively supported
her termination." However, such contentions tend to air more
towards the claim for breach of the duty of fair representation,
not a retaliation claim. Further, such allegations do not lend
support to show the act of reporting Bordonaro's behavior to the
Union caused Folgers to terminate her employment. Plaintiff could
have satisfied this causal element had she alleged a causal
connection is inferred from the close temporal proximity between
the act of reporting Bordonaro's behavior and her subsequent
termination. *See Williams v. Recovery Sch. Dist.*, 859 F. Supp. 2d
824 (E.D. La. 2012) ("causation may be inferred from a close
temporal proximity between a protected activity and an adverse
employment action); *Strong v. Univ. Healthcare Sys., L.L.C.*, 482
F.3d 802, 808 (5th Cir.2007). However, plaintiff has not alleged
the existence of any causal connection and factual support for
same. Courts do not assume or insert allegations into complaints.
While the noted pleading deficiencies are glaring ones, plaintiff
may seek leave if she can do so in good faith to amend the complaint
within fourteen days of this ruling's issuance in an effort to

provide factual allegation of and support for causal connectivity, if any.

### G. Plaintiff fails to state a claim against the Union for Discriminatory Conduct under the ADA.

The ADA prohibits discrimination by a "covered entity" against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A "covered entity" includes a "labor organization." 42 U.S.C. § 12111(2). To establish a prima facie case for discrimination against a union, the plaintiff must show that: (1) she suffers from a disability; (2) she was subject to an adverse union action; and (3) she was treated less favorably than non-disabled employees. *Stalcup v. Commc'n Workers of Am.*, 44 F. App'x 654 (5th Cir. 2002).

In *Stalcup v. Commc'n Workers of Am.*, a terminated employee sued her former union, claiming that the union had discriminated against her on account of her disability when it failed to file a grievance against her employer for disability discrimination. 44 Fed.Appx. 654 (5th Cir.2002). There, the Fifth Circuit held that the plaintiff had to prove the following elements to state a claim for disability discrimination against her union: "(1) she suffers from a disability; (2) she was subject to an adverse union action;

and (3) she was treated less favorably than non-disabled
employees." *Id.* at *3 (citing *Alexander v. Local 496*, Laborers'
Int'l Union of N. Am., 177 F.3d 394, 402-03 (6th Cir.1999)).
Ultimately, the Court ruled that the plaintiff did not establish
a prima facie case of discrimination by the union because she
failed to establish that the union treated her less favorably than
non-disabled employees. *Id.*

As shown with the Title VII claims, plaintiff did not
adequately plead all the elements and factual support for an ADA
claim. The first element was satisfied by alleging she is disabled
as the term is used under the ADA because of Attention Deficit
Disorder. Likewise, the second element was satisfied when
plaintiff asserted the Union failed to investigate her reports of
sexual harassment and discrimination. However, she failed to
present any allegations with factual support concerning the third
element, that she was treated less favorably than other non-
disabled employees.

In the petition, plaintiff mentions being discriminated
against because of her disability when her **employer** provided her
with a one-page evaluation completed only by Bordonaro. Rec. Doc.
1-1, at 7 (Plaintiff's Petition). According to plaintiff, other
"non-disabled employees – received a multipage evaluation which
was completed by multiple evaluators." *Id.* Even assuming this
contention is true, this allegation concerns plaintiff's claim

23

against Folgers under the ADA and not the Union. The fact that "non-disabled employees" received multi-page evaluations from Folgers bears no insight into how the Union treats non-disabled union members in comparison to plaintiff. Just as plaintiff pled the above allegation concerning Folgers' adverse treatment of her compared to non-disabled employees, plaintiff was required to provide a similar allegation concerning the Union's treatment of her compared to non-disabled members. Because plaintiff failed to provide such an allegation, plaintiff's ADA claim against the Union fails.

New Orleans, Louisiana, this 25th day of January, 2022

_____

SENIOR UNITED STATES DISTRICT JUDGE