**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**MELINDA DUNN**                                      **CIVIL ACTION**

**VERSUS**                                            **NO. 21-1452**

**FOLGERS COFFEE COMPANY**                            **SECTION "B"(2)**
**d/b/a THE J.M. SMUCKER CO.,**
**ET AL.**

## ORDER AND REASONS

Before the Court are defendant Folgers Coffee Company's motion for summary judgment (Rec. Doc. 24), plaintiff Melinda Dunn's response in opposition (Rec. Doc. 25), and defendant's reply in support (Rec. Doc. 29). For the following reasons,

**IT IS ORDERED** that defendant's motion for summary judgment (Rec. Doc. 24) is **GRANTED.**

### I.   FACTS AND PROCEDURAL HISTORY

On or about August 26, 2019, plaintiff began employment with defendant Folgers Coffee Company d/b/a J.M. Smucker Co. ("Folgers") as a Plant Technician. Rec. Doc. 1-1. During the first several weeks of training, she was trained by Moe Smith, her supervisor. *Id.* Plaintiff progressed normally and was not subject to any "bad" or "unacceptable" evaluations during training with Smith. *Id.* However, partway through training, plaintiff was reassigned to a new supervisor and trainer, Wayne Bordonaro. *Id.* According to plaintiff, she was informed by Folgers that Moe Smith

1

was being trained in a new set of skills with the company, and a new trainer had to be assigned. Rec. Doc. 1-1.

During training with Bordonaro, plaintiff claims that he repeatedly undermined, belittled, and silenced her in front of other co-workers. *Id.* Bordonaro also allegedly refused to refer to plaintiff by her name; instead, Bordonaro called her using the nickname "boo." *Id.* Bordonaro also repeatedly blamed his mistakes on plaintiff and refused to listen to her admonitions on proper procedures. *Id.* Further, Bordonaro would allegedly provide inconsistent and unintelligible instructions, often in rapid succession, and reprimanded her for asking questions when she was confused. *Id.* He allegedly told plaintiff that "what happens on this line stays on this line" and "don't ever let me hear that my name crossed your lips." Rec. Doc. 1-1.

On or about October 11, 2019, plaintiff scheduled a meeting with Union President and Folgers employee, Ricky Silva. *Id.* At this meeting, plaintiff reported to Silva that she was being harassed and discriminated against by Bordonaro. *Id.* Plaintiff allegedly sought Silva's help because he was the Union President and Folgers' procedure designated Silva to receive reports of sexual harassment and discriminatory conduct. *Id.* Shortly after reporting noted conduct, plaintiff was informed that Folgers was terminating her employment. *Id.*

On or about May 7, 2021, plaintiff filed a petition for damages, alleging unlawful discrimination based on sex and disability. *See* Rec. Doc. 1-1. Plaintiff also brought claims for retaliation under Title VII and breach of duty of fair representation under the National Labor Relations Act ("NLRA"). *Id.* She claims the Union failed to investigate but actively supported her harasser, Bordonaro. *Id.* On or about July 30, 2021, defendant Folgers removed the action to this court based on federal question jurisdiction, 28 U.S.C. § 1331. Rec. Doc. 1 (Removal Action).

According to plaintiff, she is disabled as the term is used within the Americans with Disabilities Act ("ADA") because she has been diagnosed and received treatment for attention deficit disorder. Rec. Doc. 1-1. The complaint asserts that Folgers was aware of plaintiff's disability because she disclosed that information in her new hire paperwork. *Id.* Additionally, as part of defendants' hiring practices, she was required to submit to a pre-employment drug test. *Id.* It was at this drug test that she disclosed taking methylphenidate for her disability. *Id.*

On August 24, 2021, defendants Union and Silva filed a FRCP 12(b)(6) motion to dismiss. Rec. Doc. 10. Subsequently, on September 28, 2021, plaintiff filed a timely memorandum in opposition, arguing the motion should be denied on several grounds. Rec. Doc. 15. defendants filed a reply memorandum supporting their

motion to dismiss on October 4, 2021. Rec. Doc. 19. On January 26, 2022, this Court issued an Order and Reasons granting defendants' motion. Thus, the only defendant remaining in this matter is Folgers Coffee Company.

On May 11, 2022, Folgers filed the instant motion for summary judgment, seeking to dismiss all plaintiff's claims against it. Rec. Doc. 24. Plaintiff filed a timely opposition on May 17, 2022. Subsequently, on May 25, 2022, Folgers filed a reply in support of its motion. Rec. Doc. 29.

## II.  LAW AND ANALYSIS

### A. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). As such, the court should view all facts and evidence in the light most favorable to the non-moving party. *United Fire & Cas. Co. v. Hixon Bros. Inc.*, 453 F.3d 283, 285 (5th Cir. 2006).

4

When the movant bears the burden of proof, it must "demonstrate the absence of a genuine issue of material fact" using competent summary judgment evidence. *Celotex*, 477 U.S. at 323. However, "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). Should the movant meet its burden, the burden shifts to the non-movant, who must show by "competent summary judgment evidence" that there is a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Lindsey*, 16 F.3d at 618. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *See Sec. & Exch. Comm'n v. Arcturus Corp.*, 912 F.3d 786, 792 (5th Cir. 2019).

**B. Whether Dismissal of Plaintiff's Claims is Warranted**

Plaintiff has alleged several causes of action, including: (1) disability discrimination; (2) sex discrimination; (3) sexual harassment; (4) failure to accommodate; and (5) retaliation. See Rec. Doc. 1-1. Folgers contends that plaintiff cannot establish a *prima facie* case for any of her claims, and thus, summary judgment should be granted in its favor. Rec. Doc. 24. This Court will evaluate each of plaintiff's claims in turn.

5

### i.   Disability Discrimination in Violation of the ADA

"In a discriminatory-termination action under the ADA, the employee may either present direct evidence that [he] was discriminated against because of [his] disability or alternatively proceed under the burden-shifting analysis first articulated in *McDonnell Douglas Corp. v. Green*, a Title VII case." *E.E.O.C. v. LHC Group, Inc.*, 773 F.3d 688, 694 (5th Cir.2014) (internal citation omitted). The analysis first requires the plaintiff to establish a *prima facie* case of discrimination. *Id.* To prove a *prima facie* case for a violation of the ADA, a plaintiff must show that (1) she is disabled or regarded as disabled within the meaning of the ADA, (2) she is qualified for the job position, and (3) she was subjected to an adverse employment action on account of his disability or perceived disability. *Id.* at 697.

### a. Disabled or Qualified as Disabled

"An individual has a disability under the [ADA] if he or she (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such impairment, or (3) is regarded as having such impairment." *Stewart v. City of Houston Police Dept.*, 372 Fed.Appx. 475, 477 (5th Cir.2010) (citations and internal footnotes omitted). Here, it is undisputed that plaintiff suffers from a qualified disability, namely, attention deficit disorder ("ADD"). *See* Rec. Docs. 24, 25. Plaintiff has also provided evidentiary support establishing

that she has a record of ADD and maintains a prescription for ADD. Rec. Doc. 25-2 (Deposition of Melinda Dunn at p. 318). Accordingly, this element of plaintiff's claim is satisfied.

b. <u>Qualified for Job</u>

The second element requires plaintiff to show that she is qualified for her job position at Folgers. *LHC Group, Inc.*, 773 F.3d at 697. An individual is "qualified" under the ADA if she can perform the essential functions of her job, with or without a reasonable accommodation. 42 U.S.C. § 12111(8).

It is undisputed that Dunn worked at Folgers as a Plant Technician, and an essential job duty of that position is to safely operate a forklift. See Rec. Doc. 24; Rec. Doc. 25. However, Folgers argues that plaintiff did not meet the company's standards for safely operating the forklift. Rec. Doc. 24. Defendant points to two safety incident reports to support its assertion. *Id.* at p. 4. These reports show that Dunn was involved in two incidents during her probationary period. Rec. Doc. 24-9 (Dunn Termination Meeting Notes).  Folgers also points to several exhibits in which Dunn's supervisors expressed concerns about her forklift skills, her unwillingness to take constructive feedback, and her safety risk to herself and others. *See* Rec. Doc. 24-9 (Dunn Termination Meeting Notes); Rec. Doc. 24-10 (Probationary Employee Performance Review Summary); Rec. Doc. 24-11 (Probationary Employee Performance Feedback).  Taken together, defendant argues that

7

Dunn could not perform an essential function of her job, and therefore, was not qualified. *Id.*

At this point, the burden shifted to plaintiff to provide "competent summary judgment evidence" that there is a genuine issue of material fact. *See Lindsey*, 16 F.3d at 618. She did not satisfy her burden of proof. Plaintiff merely argues that she is qualified for the position of Plant technician simply because she "passed every physical and mental test provided by the company." Rec. Doc. 25 at pp. 13-14. Alone, this unsupported assertion is not enough to overcome summary judgment. Plaintiff also relies on "Probationary Employee Performance" evaluations which she claims shows that her supervisors recognized that "she had a great work ethic." See Rec. Doc. 25-7; Rec. Doc. 25-8 (Probationary Employee Performance Feedback Forms).

Even considering this evidence in the light most favorable to her, it still does not raise a genuine issue of material fact. Just because plaintiff has provided evidence that some of her supervisors thought "she had a great work ethic," that information does not equate to proving she was in fact qualified for her position. Likewise, passing every physical and mental test provided by the company does not necessarily show Dunn was qualified for her position. First, there is no evidence that those alleged tests focused on her ability to operate a forklift, which the parties agree is an important skill that is required for all

8

Plant Technicians. Second, the alleged tests may have focused on several other skills required of all employees rather than plaintiff's specific job position. Dunn has not provided any evidence to support her claim that she is qualified for her position or combat the evidence provided by the defendant. Thus, plaintiff has failed to provide adequate support for this element.

   c. Adverse Employment Action Because of Disability

Folgers admits that plaintiff has suffered an adverse employment action given she was terminated. But, defendant contends that she was not terminated because of her disability because no one at the company knew of her disability. In support, defendant cites to Dunn's deposition in which she stated that she did not "discuss [her disability] with people." Rec. Doc. 24-5 (Deposition of Melinda Dunn at pp 193-95). Folgers also points to the declaration of plaintiff's Packing Manager, Kim Simien. Rec. Doc. 24-20 (Declaration of Kimbule Simien). Simien articulated that she made the decision to terminate plaintiff and did so because she did not meet company standards. *Id.*

Plaintiff asserts that she was fired because of her ADD. Rec. Doc. 25. However, she does not point to any evidence to support her claim. *See id.* She merely references the deposition testimony of Bordanaro in which he stated that instead of learning and observing different work techniques, plaintiff would be on the computer "doing her own thing." Rec. Doc. 25-4 (Deposition of Wayne

Bordonaro at pp. 36-37). Dunn asserts that that this evidence shows that she would have difficulty understanding problems and would rush "to learn the full schematics" of a piece of equipment. She also points to a performance review summary in which Bordonaro commented that plaintiff's forklift safety was at a "very low level," she constantly complained about not being on the same team as her husband and did not take feedback. Rec. Doc. 25-6 (Performance Review Summary).

The evidence plaintiff has provided in support of this element falls woefully short of establishing a genuine issue of material fact. None of plaintiff's exhibits support an inference that she was fired *because of* her ADD. If anything, the evidence weighs in favor of Folgers and its contention that plaintiff was fired for not meeting company standards. Furthermore, plaintiff admitted that she did not inform her supervisors of her disability and that "[she] never disclosed any health information. [She] is a private person." Rec. Doc. 24-5 (Deposition of Melinda Dunn at pp 193-95). Because plaintiff has not provided any evidence that a reasonable juror could utilize to rule in her favor on this element, she has not satisfied her burden of proof.

In sum, plaintiff has failed to provide evidentiary support for two elements of her disability discrimination claim: (1) that was qualified for her position; and (2) she was terminated because

of her disability. Accordingly, summary judgment is granted as to this claim.

### ii.  Failure to Accommodate in Violation of the ADA

Plaintiff further alleges Defendant violated the ADA by failing to provide her with a reasonable accommodation. The ADA obligates an employer to reasonably accommodate the known physical or mental impairments of "a qualified individual with a disability". 42 U.S.C. §§ 12112(b)(5)(A)-(B) (employer violates ADA by "not making reasonable accommodations"). "This obligation arises once an employer is put on notice of an employee's need to be reasonably accommodated—which usually, but not always, occurs after the employee requests an accommodation." *Amedee v. Shell Chem. LP-Geismer Plant*, 384 F. Supp. 3d 613, 642-43 (M.D. La. 2019), *aff'd sub nom. Amedee v. Shell Chem., L.P.*, 953 F.3d 831 (5th Cir. 2020). Once the employer is put on notice, both parties are required to engage in good faith to develop a reasonable accommodation. *See id.* To prevail on a failure-to-accommodate claim, the plaintiff must show: (1) she is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make "reasonable accommodations" for such known limitations." *Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413, 417 (5th Cir. 2017).

Folgers argues that Dunn cannot provide support for elements two (2) and three (3) given she did not disclose that she had a disability, and thus, her supervisors were never put on notice that she required an accommodation. Rec. Doc. 24. In response, plaintiff contends that Folgers was aware of her disability because she disclosed that information during the hiring process. Rec. Doc. 25 at p. 17. Plaintiff claims she took a physical exam as part of her on-boarding process, and she informed the nurse on-site that she had ADD. *Id.* She further alleges that the nurse was a member of the Folgers' health and wellness team because the paperwork she received was on Folgers' letterhead and the nurses email address was "@jmsmucker.com." *Id.* Rec. Doc. 25-20 (Pre-employment Physical Exam Letter and Cards).

Even assuming Dunn is disabled within the meaning of the ADA, no reasonable jury could find that Folgers failed to reasonably accommodate her disability. *E.E.O.C. v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir.2009) ("An employee who needs an accommodation because of a disability has the responsibility of informing her employer."). "This court has recognized that 'where the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer, the initial burden rests primarily upon the employee ... to specifically identify the disability and resulting limitations,

12

and to suggest the reasonable accommodations.'" *Id.* (quoting *Taylor v. Principal Fin. Grp.*, 93 F.3d 155, 165 (5th Cir.1996)).

Not only has plaintiff failed to point to any evidence that she informed Folgers of her disability directly, but she also has not provided any evidence to combat the support provided by the defendant. The only evidence plaintiff relies upon is her pre-employment physical exam letter and the alleged on-site nurse's business cards. Rec. Doc. 25-20 (Pre-employment Physical Exam Letter and Cards). First and foremost, the business cards clearly state that the nurse worked for "Premise Health" and held an email address "@premisehealth.com." *See* Rec. Doc. 25-20 (Pre-employment Physical Exam Letter and Cards). Second, the email address containing the "@jmsmucker.com" language plaintiff relies upon was written on the card *by hand*, which is highly suspicious. *See id.* Lastly, plaintiff's statement that the letter she received was on paper containing the company letterhead is also false. *See id.* Even assuming *arguendo*, plaintiff's letter and the nurse's business cards supported her claim, such an exhibit constitutes only a scintilla of evidence and not enough to satisfy her burden of proof on this motion. *See Sec. & Exch. Comm'n v. Arcturus Corp.*, 912 F.3d 786, 792 (5th Cir. 2019) (stating a party cannot defeat summary judgment with a scintilla of evidence).

Moreover, by plaintiff's own admission she never informed anyone at Folgers that she had a disability. See Rec. Doc. 24-5

(Deposition of Melinda Dunn at pp 193-95). This includes her supervisors and trainers Bordonaro, Simien, and Schmidt. *See id.* According to plaintiff, "[she] never disclosed any health information" because she is "a private person." *Id.* Given plaintiff has not provided any competent evidence to establish that she informed Folgers of her disease, plaintiff cannot satisfy the second element of her claim.

Similarly, she cannot prove the third element of her claim given she has not provided any evidentiary support for her assertion that she "repeatedly requested that the company allow her to work and learn in such a way that her disability would be accommodated." Rec. Doc. 25 at p. 14. Such unsubstantiated assertions are not enough to defeat summary judgment. *See Sec. & Exch. Comm'n*, 912 F.3d at 792. Because plaintiff cannot provide sufficient support for her *prima facie* case, this claim is dismissed.

### iii. Sex Discrimination in Violation of Title VII

A Title VII plaintiff carries the initial burden of establishing a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also Tate v. United Steel Workers Union Loc. 8363*, No. CV 20-882, 2021 WL 3633472 (E.D. La. Aug. 17, 2021). To prevail on this claim, plaintiff must prove: (1) she is a member of a protected class, (2) qualified for her position, (3) subjected to an adverse

employment action, and (4) treated less favorably than someone outside the protected class. *See McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).

To establish that she was treated less favorably than similarly non-protected employees, plaintiff must proffer a comparator, an employee who is a member of a different sex who was treated more favorably "under nearly identical circumstances," which is established when the members' conduct and circumstances are nearly identical. *See Dotson v. Gulf*, No. Civ.A. H-05-0106, 2006 WL 44071, at *7 (S.D. Tex. Jan. 9, 2006) (citing *Krystek v. Univ. of S. Miss.*, 164 F.3d 251, 257 (5th Cir. 1999) (holding non-tenure track professor is not similarly situated to a tenure track professor)); *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) ("[W]e require that an employee who proffers a fellow employee demonstrate that the employment actions at issue were taken 'under nearly identical circumstances.'").

The parties do not dispute that plaintiff is a member of a protected class or that she was subjected to an adverse employment action. However, Folgers contends the claim nonetheless fails because plaintiff cannot provide adequate support for the remaining two elements. This Court agrees. As discussed *supra*, Dunn has failed to put forth any competent summary judgment evidence in support of her assertion that she is qualified for the position of Plant Technician. *See* Section B(1)(b). Additionally,

she has not provided <u>any</u> evidence of a comparator to support her
contention that her male counterparts were treated more favorably.
Plaintiff merely provides an assertion that "she was evaluated
before any of her peers in her training class were evaluated."
Rec. Doc. 25 at p. 15.  Without specific evidence of a similarly
situated non-protected employee who was treated better than her,
plaintiff's claim fails.

### iv. Sexual Harassment in Violation of Title VII

Sexual harassment is a form of sex discrimination. *See Meritor
Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64-65, 106 S.Ct. 2399, 91
L.Ed.2d 49 (1986).  A plaintiff bringing a sexual harassment claim
under Title VII must prove: (1) that she belongs to a protected
group; (2) that she was subjected to unwelcome harassment; (3)
that the harassment complained of was based upon sex; (4) that the
harassment complained of affected a term, condition, or privilege
of employment; and (5) that the employer knew or should have known
of the harassment and failed to take prompt, remedial action.
*Currier v. Entergy Servs., Inc.*, 73 F. Supp. 3d 673, 675 (E.D. La.
2014); *see also McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d
558, 563 (5th Cir.1998).

Upon review of plaintiff's opposition, she has utterly failed
to acknowledge and/or rebut the defendant's argument that her claim
should be dismissed.  Instead, her only reference to harassment,
sexual or otherwise, rests in a one sentence assertion that she

believed Bordonaro was "attempting to harass her out of a job."
Rec. Doc. 25 at p. 6. She also points to her own deposition
testimony in which she testified that Bordonaro was "demeaning,
dismissive, and provided her with contradictory instructions."
Rec. Doc. 25-2 (Deposition of Melinda Dunn at pp. 132-52). First
and foremost, the deposition excerpt plaintiff provided merely
illustrates that she and Bordonaro had work disagreements
regarding proper safety procedures on her line. Plaintiff has not
provided any support that she was in fact subjected to unwelcome
sexual harassment. Additionally, plaintiff rests on her testimony
and has provided nothing more to support her claim. This alone is
insufficient, and she has failed to carry her burden of proof at
this stage.

Even if plaintiff had adequately provided support that she
was subject to unwelcome sexual harassment, her claim would still
fail given she did not provide any evidence that Folgers was aware
of the harassment and failed to act. Plaintiff argues that Folgers
was aware of the harassment because she reported it to Union
President, Ricky Silva. She claims Silva was a proper person to
inform of the harassment because she complained to him "in his
capacity as a supervisor of [Folgers]." However, plaintiff failed
to support her assertions.

The only support plaintiff cites is the deposition of Kimbule
Simien, in which she stated that Silva was a Fire Safety Leader at

the Folgers plant. Rec. Doc. 25-3 (Deposition of Kimbule Simien at pp. 73-74).  Plaintiff argues that Simien's testimony confirms that Silva held a leadership role and thus her complaint to him was enough to put Folgers on notice. We disagree. Nothing plaintiff has provided can be utilized by a reasonable juror to find that Silva was a proper party with whom she could file a complaint and place Folgers on notice of discriminatory conduct. Dunn alleges that Silva admitted in his affidavit that he "ha[d] a supervisory role with the company," and "that he would investigate [her] claims." But plaintiff attached no such affidavit in support of her assertion. Plaintiff has also not provided the Court with any other support for the notion that her complaint to Silva was enough to place Folgers on notice. If nothing else, the evidence shows that the Union was put on notice given she informed the Union President. Without evidence that Folgers knew of the alleged harassment, plaintiff's claim fails against that named defendant.

### v.  Retaliation Claim in violation of Title VII

Dunn has also alleged a claim against Folgers for retaliation, which the district court also considers under Title VII. "There are three elements to a *prima facie* case of retaliation under Title VII: (1) that the plaintiff engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action." *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463,

471 (5th Cir. 2002). If the plaintiff succeeds in satisfying these elements, "the burden then shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory reason for its employment action." *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007).

Plaintiff has not provided support for each element of her claim, and thus, this claim must also be dismissed. Concerning the first prong, plaintiff asserts that she engaged in a protected activity when she reported Bordonaro's alleged discriminatory conduct to Silva. Rec. Doc. 25.  She points to her deposition testimony for support. Rec. Doc. 25-2 (Deposition of Melinda Dunn at p. 261). However, the excerpt plaintiff relies upon does not show that she alleged any discriminatory conduct to Silva. *See id.* By Dunn's own admission, her complaint to Silva was not based on either her disability or her gender. *See* Rec. Doc. 25-2 (Deposition of Melinda Dunn at p. 261). Instead, her deposition transcript shows that she informed Silva that she felt Bordonaro was "harassing her" and "trying to get her fired." *Id.* Given the lack of sufficient evidence showing plaintiff made a charge of discrimination, she cannot satisfy the first prong.

Concerning the third prong, plaintiff alleges she has satisfied this element given the temporal proximity between her complaint to Silva and her termination.  While she is correct that a causal connection *may* be inferred from the close temporal

proximity, this Court does not agree such an inference is appropriate here. *See Williams v. Recovery Sch. Dist.*, 859 F. Supp. 2d 824 (E.D. La. 2012) ("causation *may* be inferred from a close temporal proximity between a protected activity and an adverse employment action). Even if this Court assumed plaintiff's complaint to Silva qualified as a protected activity, *i.e.*, a charge of discrimination, Plaintiff did not report any acts of discrimination directly to Folgers. Silva was the only person Dunn reported the alleged discrimination to. As discussed *supra*, Dunn has not provided any evidence that Silva was the proper party to make such a complaint to or evidence supporting her assertion that Silva agreed "in his capacity as a supervisor of [Folgers]" to investigate her allegations. Given the lack of evidence that Silva was a proper party to inform, there is no support for plaintiff's claim that a causal link exists between her termination from Folgers and her complaint to Union President, Silva.

### vi.  Sex and Disability Discrimination in Violation of Louisiana Employment Discrimination Laws (LEDL)

Lastly, plaintiff argues that Folgers violated the state disability discrimination statute, which provides that "no otherwise qualified person with a disability shall, on the basis of a disability, be subjected to discrimination in employment." La. Rev. Stat. § 23:323.  This court finds that because the plaintiff did not file her lawsuit until after the eighteen (18)

month prescriptive period ended, this claim is prescribed as a matter of law and thereby dismissed.

Claims under La. Rev. Stat. § 23:323 are governed by the prescriptive period set forth in La. Rev. Stat. § 23:303(D). *See Lefort v. Lafourche Par. Fire Prot. Dist. No. 3,* 39 F. Supp. 3d 820 (E.D. La. 2014); *Nabors v. Metro. Life Ins. Co*., CIV.A. No. 12-827, 2012 WL 2457694, at *3 (W.D.La. May 30, 2012). It reads:

> Any cause of action provided in this Chapter shall be subject to a prescriptive period of one year. However, this one-year period shall be suspended during the pendency of any administrative review or investigation of the claim conducted by the federal Equal Employment Opportunity Commission or the Louisiana Commission on Human Rights. No suspension authorized pursuant to this Subsection of this one-year prescriptive period shall last longer than six months.

La. Rev. Stat. § 23:303(D). This one-year prescriptive period begins to run from the date of notice of termination. *Eastin v. Entergy Corp.*, 865 So.2d 49, 54 (La. 2004). Additionally, both the Fifth Circuit and this Court have consistently recognized that Section 23:303(D) provides for a maximum prescriptive period of eighteen (18) months. *See, e.g., Williams v. Otis Elevator Co*., 557 Fed.Appx. 299, 302 (5th Cir. 2014) ("The Louisiana anti-discrimination statute has a prescriptive period of one year, which can be suspended for a maximum of six months during the pendency of a state or federal administrative investigation."); *Lefort v. Lafourche Par. Fire Prot. Dist. No. 3*, 39 F. Supp. 3d 820, 825 (E.D. La. 2014) ("Consequently, the Louisiana disability

21

discrimination statute requires a plaintiff to file suit on his discrimination claim no later than eighteen months after the occurrence forming the basis for the claim."); *Bellow v. Bd. of Sup'rs of Louisiana State Univ. & Agr. & Mech. Coll.*, 913 F. Supp. 2d 279, 289 (E.D. La. 2012) ("Therefore, the total amount of time that a plaintiff has to bring a claim under Louisiana Revised Statute [§] 23:322 is eighteen months.")

The incident forming the basis of plaintiff's claim under the LEDL occurred on October 11, 2019. Not only did plaintiff allegedly report her allegations to Silva on that date, but Folgers also terminated her employment on that date. Therefore, plaintiff had a total of eighteen (18) months from that day to file her lawsuit. Plaintiff, however, did not file the current suit until May 7, 2021. Accordingly, the claim is prescribed on its face and must be dismissed.

New Orleans, Louisiana, this 23rd day of August, 2022

SENIOR UNITED STATES DISTRICT JUDGE